NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250758-U

NO. 4-25-0758

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Fulton County |
| THOMAS C. POULSEN, | ) | No. 25CF79 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas B. Ewing, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in finding no change of circumstances warranted
defendant's release from pretrial detention.

¶ 2     Defendant, Thomas C. Poulsen, appeals the circuit court's order denying his
request to be released from pretrial detention under section 110-6.1(i-5) of the Code of Criminal
Procedure of 1963 (Code) (725 ILCS 5/110-6.1(i-5) (West 2024)). Defendant contends a change
in circumstances shows there were less restrictive means of mitigating the threat he posed to the
community. We affirm.

¶ 3                          I. BACKGROUND

¶ 4     On April 9, 2025, defendant was charged with two counts of aggravated battery
(720 ILCS 5/12-3.05(d)(4)(i), (11) (West 2024)). According to the charges, defendant battered
two hospital employees, nurse Jeremiah Larson and security officer Shawn Pratt.

¶ 5 That same day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2024)) under the dangerousness standard. The State alleged defendant committed a forcible felony and his pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 6 At the hearing on the State's petition, the State proffered testimony from an officer of the Canton Police Department. According to the proffer, officers were dispatched to Graham Hospital. Upon their arrival to the emergency room, officers found defendant in handcuffs, and he was being held by hospital employees. Pratt was a security officer at Graham Hospital. Larson was a registered nurse there. Defendant had been waiting at the hospital for a drug test. As defendant started to leave, he was stopped. Defendant grabbed a wooden box and threw it, striking "Scott Brewer" in the elbow. Defendant became more hostile. Brewer and Larson tried to deescalate the situation by encouraging defendant to leave. Defendant, using his right fist, struck Larson, causing Larson to bleed from his nose. Defendant attempted to strike Larson again—"[t]hat was when Scott was struck." We note the charges in this case allege an aggravated battery against Pratt. There are no charges identifying "Scott Brewer" as a victim.

¶ 7 Defense counsel began with a proffer. Counsel stated defendant was at Graham Hospital seeking assistance during a mental-health crisis. Defense counsel then introduced defendant's testimony. Defendant testified he had resided at his current address for one year and would return to that address if released from custody. Defendant would attend court as required, remain in touch with defense counsel, meet with the probation officer, and submit to random drug testing. Defendant testified he had underlying health issues for which he was under a doctor's care and had been prescribed medications and, until he was incarcerated, he had been taking his medications. Defendant averred he had no one who could deliver his medications to

- 2 -

him. He further testified he had monthly appointments with a physician for his medication and saw a psychiatrist weekly. Defendant was willing to submit to random drug testing to show he was taking his medication.

¶ 8 During argument, the State began by stating defendant was released from custody in mid-February and remained "a significant risk to the community." The State noted, "We've been through this song and dance now of the defendant's mental health problems." The State argued against allowing defendant's release for health services "because we've tried that."

¶ 9 The circuit court considered defendant's pretrial services investigation report (PSI). The report showed defendant was uncooperative and refused to be interviewed. According to the PSI, the author obtained information from a 2022 PSI. At that time, defendant resided with his spouse. He had two biological children who resided with their mother. Defendant had no contact with his children. His employment status was unknown. The last grade defendant completed was seventh grade. Defendant had been diagnosed with "Depression, Anxiety, Bipolar Disorder I, and Borderline Personality Disorder," and he took prescribed medication. Defendant had denied having medical issues but reported having tried all drugs except heroin. The author further reported, in Fulton County case No. 24-OP-329, a plenary order of protection was entered against defendant in the favor of Mandy K. Schmidt. The order of protection expires in December 2026. As of the 2025 report, defendant scored a 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised, indicating a moderate-high risk level to reoffend. The assessor noted, however, the assessment was not properly scored, as defendant refused to be interviewed.

¶ 10 Defendant's criminal record, included with the PSI, indicated defendant has a history of violence. In 2003, defendant was convicted of "Mob Action/Force/2+ Persons," for

which he was sentenced to 30 months' probation, which terminated as unsatisfied. In 2011, defendant was charged with "Domestic Battery/Physical Contact" and convicted of "Battery/Makes Physical Contact" and "Knowingly Damage Property < $300," both misdemeanors. In 2015, defendant was convicted of a 2014 "Aggravated Battery/Great Bodily Harm," for which he was sentenced to 33 months in prison. In 2017, defendant was convicted of "Domestic Battery/Other Prior," for which he was sentenced to 68 days in jail and 30 months' probation. In Fulton County case No. 19-CF-10, defendant pled guilty to "Aggravated Battery/Peace Officer" and was sentenced to 3 years' imprisonment. As a result of this plea, multiple 2018 charges were dismissed, including three charges of "Violate Order Protection," one charge of "Agg[ravated] Domestic Battery/Strangle," and one charge of "Inter[fering with Reporting] Domestic Violence." The plea also resulted in the dismissal of multiple 2019 charges, including charges of "Domestic Battery/Other Prior," disorderly conduct, and "Violate Order of Protection 2nd+." In 2022, defendant was convicted of "Battery/Domestic," and sentenced to 180 days in jail and 2 years of conditional discharge. In February 2025, defendant was convicted of a June 2024 misdemeanor "Battery/Cause Bodily Harm," a December 2024 misdemeanor of "Resist/Peace Officer/Correction Emp[loyee]," and a February 2025 misdemeanor of "Aggravated Assault/Public Property." For those last three convictions, defendant was sentenced to 2 years' conditional discharge.

¶ 11    The circuit court granted the State's petition to detain defendant. The court found by clear and convincing evidence the proof was evident or presumption great defendant committed a qualifying offense, defendant posed a real and present threat to the safety of any person or persons or the community, and no condition or combination of conditions could mitigate the threat. The court expressed the following as findings supporting the conclusion less

- 4 -

restrictive conditions would not avoid defendant's real and present threat:

> "the nature of the allegations and the possible punishments for the
> defendant, the allegations relating to injuries to medical personnel,
> the Defendant's prior criminal history as well as prior allegations
> of violent offenses, and the Court[']s knowledge of Defendant's
> mental health and substance abuse issues."

¶ 12        On May 7, 2025, defendant filed a motion for review of his pretrial detention under section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2024)). Defendant alleged changes in circumstance supported pretrial release. Defendant asserted he found appropriate housing, had medical appointments for physical and mental-health treatment, and returned to the county jail when he was granted a furlough to seek treatment and attend his appointments.

¶ 13        At the May 15, 2025, hearing on the motion, defense counsel proffered defendant was at Graham Hospital at the time of the offenses due to mental-health issues. Defendant had doctors' appointments "coming up." Defendant met with his behavioral psychiatrist and psychologist weekly, and he saw Dr. Chad Lampe for his medication. When he was going to Graham Hospital, defendant "was having psychiatric issues," and he was seeking assistance when the alleged incident occurred. Approximately two weeks before the hearing, defendant was given a furlough in this matter to seek mental-health treatment and get some affairs in order from a Wednesday to a Friday. Defendant returned early, with no issues.

¶ 14        Defendant testified he was looking for work and had filed for disability benefits. Defendant identified an address where he would reside if released. Defendant asserted he would abide by house-arrest restrictions. Defendant had "a borderline personality disorder, Bipolar 1

[disorder], severe depression, severe anxiety, [and post-traumatic stress disorder]." He met weekly with counselors at Graham Medical Unit. He met monthly with Dr. Lampe. Defendant missed an appointment with his behavioral specialist to attend that hearing, and he was concerned he would be dropped from counseling if he missed too many appointments. Defendant was willing to submit to random drug testing and meet with the probation officer.

¶ 15 The circuit court questioned defendant regarding his medications. Defendant stated he was receiving all of his medications at the jail, as the correctional officer delivered them daily. The court concluded it did not see "a change in circumstances at this time to warrant your release." The court stated it could continue to arrange furloughs to allow defendant to continue to meet with the behavioral therapist. The court then stated the following:

"You are receiving medications. We were aware that you had medications. And, it seems like not taking those medications was a significant component of what happened. And what happened, allegedly, was not good. It put a medical personnel at risk. It also put law enforcement when they're called to deal with it at risk, and it puts you at risk. I want to see you continue getting those now.

I'm concerned that the quote 'house arrest' may lead to something that we're going to regret, and I don't see the change in circumstances. The furlough that you had before worked. It was short, short and sweet. That doesn't mean a release would have the same desired effect at this point.

We want you to get better. I'm glad you're on track, but I

think your close supervision in these circumstances is in your

interest and in the public's interest."

¶ 16 On June 4, 2025, the issue of defendant's detention was revisited. At that hearing, defense counsel reminded the circuit court defendant, while detained, had been granted four furloughs to attend counseling and to go to medical appointments. Counsel stated defendant timely returned from each appointment and had no new charges. Counsel further submitted a letter from defendant's counselor, Michelle Locke of Graham Medical Group. According to Locke, she had met with defendant weekly for mental-health therapy since January 9, 2025. When defendant was told there was an extensive waiting list to be seen, he went to Locke's office and begged the receptionist to be seen earlier, as there "were issues that he could no longer manage on his own." Defendant "faithfully attended every counseling appointment," except those missed while he was incarcerated. Locke diagnosed defendant with post-traumatic stress disorder and major depressive disorder. As a child, defendant suffered abuse, causing him to develop maladaptive coping skills resulting in anger when he felt unsafe. Defendant welcomed the opportunity jail afforded him to get clean from using various substances. Defendant acknowledged he alone is responsible for the situation he is in and demonstrated a true desire for change. The court ordered continued detention.

¶ 17 On June 12, 2025, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). In his motion, defendant argued the circuit court erred in finding continued detention necessary, asserting the record showed a change in circumstances. Defendant's argument, which followed a brief procedural history, is as follows:

"That the Defendant respectfully requests this Court

reconsider its findings in the Order for Detention and provide the

Defendant relief by vacating the Order for Detention entered, for the following reasons:

That at the hearing on June 4, 2025[,] the Defendant provided information relating to a change in circumstance in that a letter from the Defendant's mental health counselor was provided indicating the extraordinary steps the Defendant has taken to address his mental health, that the Defendant provided testimony that he had secured appropriate housing in Fulton County, that he would wear [an] ankle monitor, have no contact with the alleged victims, that when he came into custody he was suffering from mental health issues, that since the time of his incarceration he has been provided the appropriate medication and has his mental health issues under control, that the Defendant has been released numerous times since being detained, on furloughs, to attend his mental health treatment and that he has returned on time or early every time so far, that while out on furloughs he has committed no crimes and abided by all orders of the court, and that he would abide by any conditions the Court wished to impose upon him, and because of that the Defendant showed there were less restrictive means than his continued detention."

¶ 18 Defendant emphasized he, at the June 4, 2025, hearing, provided a letter from his mental-health counselor setting forth "the extraordinary steps the Defendant ha[d] taken to address his mental health," and he testified he found appropriate housing, would wear an ankle

monitor, and would have no contact with the victims. Defendant asserted he was taking his medication and his mental-health issues were under control. Defendant emphasized he had "been released numerous times since being detained, on furloughs, to attend his mental health treatment and that he [had] returned on time or early every time so far." After a hearing on the motion, the circuit court, on June 23, 2025, denied defendant's motion for relief.

¶ 19    On July 16, 2025, a hearing was held on defendant's request to be released from custody. Defense counsel argued defendant, while incarcerated, developed a medical issue "with his bowels" and sought a four-day furlough for a colonoscopy. Counsel further emphasized defendant's compliance with furloughs and defendant's willingness to comply with conditions, such as wearing an ankle monitor and staying on house arrest, if the circuit court would release him. The State did not dispute defendant's request for a furlough for medical treatment but objected to defendant's release. The court allowed the furlough but did not grant defendant pretrial release.

¶ 20    This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22    Defendant did not file a memorandum in support of his appeal but relies on the argument in his motion for relief. While this action is authorized by Rule 604(h)(7), the rule also requires "the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Defendant's motion for relief does not comply with Rule 604(h)(7), meaning this court may find his claim forfeited. See *People v. Post*, 2025 IL App (4th) 250598, ¶ 22. Because defendant's motion for relief contains "some basic facts" and uses statutory language and it preceded our *Post* decision,

in which this court stressed the importance of compliance with Rule 604(h)(7)'s requirements in an appeal from a section 110-6.1(i-5) ruling (see *id.* ¶¶ 1, 23), we will address the merits of his claim.

¶ 23    After a defendant has been detained under the dangerousness standard of section 110-6.1(a), (e) of the Code (725 ILCS 5/110-6.1(a), (e) (West 2024)), "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(i-5). Before changing a detention order under section 110-6.1(i-5), a circuit court must conclude a change in circumstances occurred. *Post*, 2025 IL App (4th) 250598, ¶ 26. We review a circuit court's decision on the issue of continued detention under section 110-6.1(i-5) for an abuse of discretion and will find an abuse of discretion only when we find the decision is fanciful, unreasonable, or arbitrary or we conclude no reasonable person would agree with the circuit court's position. *Id.* ¶ 29. We note defendant, in his motion for relief, did not challenge the initial detention order.

¶ 24    The circuit court did not abuse its discretion in finding the continued detention of defendant was necessary to avoid a real and present threat to the safety of any person or persons or the community. Defendant presented no new information to demonstrate a change in circumstances sufficient to justify altering the pretrial-detention order. At the initial detention hearing, the evidence proffered showed defendant had a history of mental illness and a criminal history containing many violent offenses, including multiple domestic-violence charges. While the letter from his counselor shows defendant was making strides in his treatment, the letter also reveals the depth of defendant's struggles with mental illness and his maladaptive coping skills of resorting to anger when he felt unsafe. The letter also shows defendant had begun counseling

with Locke approximately three months before the charged offenses occurred. It is reasonable for the court to conclude in such circumstances defendant's timely return from furloughs for medical treatment, his mental-health counseling, and his assurances he would comply with conditions were not enough to remove the real and substantial threat defendant's release posed to the community.

¶ 25                                    III. CONCLUSION

¶ 26            We affirm the circuit court's judgment.

¶ 27            Affirmed.